**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARK EDWARD LASKOWSKI,<br>Plaintiff,<br><br>v.<br><br>AXIOM FINANCIAL SERVICES LLC;<br>HALLIDAY, WATKINS & MANN, P.C.;<br>QUINTAIROS, PRIETO, WOOD & BOYER, P.A.; and FCI LENDER SERVICES, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 1:26-cv-10027**<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Mark Edward Laskowski ("Plaintiff"), by his attorney, Scott J. Oh, complains of Defendants Axiom Financial Services LLC, Halliday, Watkins & Mann, P.C., Quintairos, Prieto, Wood & Boyer, P.A., and FCI Lender Services, Inc., and states as follows.

## NATURE OF THE ACTION

1. Plaintiff seeks damages for debt-collection conduct alleged to violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("ICFA"). The claims arise in substantial part from Axiom's collection activity in Illinois while unlicensed under the Illinois Collection Agency Act, 205 ILCS 740/1 et seq. ("ICAA"), and from the related collection conduct of the other Defendants alleged below.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims under the Fair Debt Collection Practices Act arise under the laws of the United States. See 15 U.S.C. § 1692k.

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, because that claim forms part of the same case or controversy as the federal claims.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in DuPage County, Illinois, which lies within this District and its Eastern Division.

5. Plaintiff seeks damages arising from Defendants' collection conduct. Plaintiff does not seek review, modification, or reversal of any state-court judgment or order.

**THE PARTIES**

6. Plaintiff Mark Edward Laskowski is a natural person who resides in Illinois at 5N758 Rochefort Lane, Wayne, Illinois 60184, and receives mail at PO Box 529, Wayne, Illinois 60184. He is a "consumer" as defined by 15 U.S.C. § 1692a(3).

7. Defendant Axiom Financial Services LLC ("Axiom") is a Delaware limited liability company with an office at 228 Park Avenue S, #67157, New York, New York. Its registered agent is Harvard Business Services, Inc., 16192 Coastal Highway, Lewes, Delaware 19958.

8. In its Form LLC-45.5 Application for Admission to Transact Business in Illinois, Axiom stated that its proposed business purpose in Illinois was "Debt collection and Debt purchasing." Axiom regularly acquires defaulted consumer debts and collects on them. See *Axiom Application for Admission to Transact Business*, Exhibit A.

9. The Illinois Department of Financial and Professional Regulation ("IDFPR") determined that Axiom operated as a collection agency in Illinois without the license required by

the ICAA. Axiom is a debt collector within the meaning of 15 U.S.C. § 1692a(6). See *IDFPR Consent Order*, Exhibit B; *Axiom Application for Admission to Transact Business*, Exhibit A.

10. In *People ex rel. Laskowski v. Axiom Financial Services, LLC*, 2026 IL App (3d) 250359, the Illinois Appellate Court, Third District, held that Axiom was required to register under the ICAA and acted as an unlicensed collection agency through its purchase of defaulted mortgage notes and prosecution of judicial foreclosure actions. Said Appellate Court Opinion is attached as Exhibit C.

11. Defendant Halliday, Watkins & Mann, P.C. ("Halliday") is a Utah professional corporation and law firm with an office at 376 East 400 South, Suite 300, Salt Lake City, Utah 84111. Its registered agent in Illinois is Chris Iaria, 1804 N. Naper Boulevard, Suite 210, Naperville, Illinois 60563. On information and belief, Halliday maintains a multistate mortgage-default and creditors' rights practice and regularly collects consumer debts through mortgage foreclosure litigation. Halliday served as Axiom's counsel in the Foreclosure Lawsuit from December 2025 forward. Halliday is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

12. Defendant Quintairos, Prieto, Wood & Boyer, P.A. ("Quintairos") is a Florida professional association and law firm. Its registered agent in Illinois is Registered Agent Solutions, Inc., 901 S. 2nd Street, Suite 201, Springfield, Illinois 62704-7909. Quintairos regularly collects consumer debts through mortgage foreclosure litigation and served as Axiom's counsel in the Foreclosure Lawsuit until Halliday replaced it in December 2025. Quintairos is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

13. Defendant FCI Lender Services, Inc. ("FCI") is a California corporation that services mortgage loans, with a mailing address of PO Box 27370, Anaheim, California 92809-0112. Its registered agent in Illinois is Cogency Global Inc., 600 South Second Street, Suite 404,

Springfield, Illinois 62704-2542. FCI began servicing Plaintiff's loan after the loan was already in default, and it regularly collects debts owed or due another. In its own written communications to Plaintiff, FCI stated that it "is a debt collector and is attempting to collect a debt." FCI is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

### A. Plaintiff's Home and the Mortgage Loan

14. Plaintiff resides at 5N758 Rochefort Lane, Wayne, Illinois 60184, in DuPage County (the "Property"). Plaintiff was the record owner of the Property.

15. On June 15, 2006, Plaintiff and Christina E. Beasley executed a promissory note in the principal amount of $1,000,000 payable to Credit Suisse Financial Corporation. A mortgage on the Property secured the note. Plaintiff incurred the loan primarily for personal, family, or household purposes connected to his residence. Plaintiff is a person obligated on that note, and his claims arise from the defendants' efforts to collect that obligation.

16. The obligation is a "debt" within the meaning of 15 U.S.C. § 1692a(5) because it arises out of a transaction entered primarily for personal, family, or household purposes.

17. According to FCI, Plaintiff defaulted on the loan on or about March 1, 2009.

18. The mortgage passed through a series of assignments. Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Credit Suisse Financial Corporation, assigned the mortgage to CitiMortgage, Inc. on May 12, 2010. MERS assigned the mortgage to PennyMac on August 26, 2013. PennyMac assigned the mortgage to PMT NPL Financing 2014-1 on December 26, 2014. After a recorded repurchase on November 13, 2018, PennyMac assigned the mortgage to TransAm Holdings, LLC. TransAm Holdings, LLC then assigned the mortgage to Axiom, and DuPage County recorded that assignment on April 15, 2020 as #R2020-036474.

19. Axiom acquired the mortgage debt in 2020, more than a decade after Plaintiff's 2009 default. Axiom acquired a debt that was already in default.

20. FCI services the loan under account number 9160054326 and acts, in its own words, as "the authorized servicing agent working at the direction of the Lender, Axiom Financial Services." As of June 2, 2026, FCI represented the unpaid principal balance as $1,000,000.00 at an interest rate of 7.50000000%.

**B. Axiom Operated as an Unlicensed Collection Agency, and IDFPR Ordered It to Stop**

21. The Illinois Collection Agency Act, 205 ILCS 740/1 et seq. ("ICAA") governs the regulation and control of collection agencies in Illinois. IDFPR administers and enforces the ICAA.

22. The ICAA defines a collection agency, and Axiom meets the definition under both enacted versions of Section 2. In the text enacted by Public Act 104-297 (effective January 1, 2026), "'[c]ollection agency' means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in the collection of a debt." 205 ILCS 740/2. In the parallel text enacted by Public Act 104-149 (also effective January 1, 2026), a collection agency includes any person who, in the ordinary course of business, regularly "engages in the business of buying debt." 205 ILCS 740/2.

23. Before those amendments, and throughout Axiom's acquisition and collection of Plaintiff's debt through 2025, Section 3(d) of the ICAA provided that a person acted as a collection agency when he, she, or it "buys accounts, bills or other debt." 205 ILCS 740/3(d) (repealed by Public Act 104-149, effective January 1, 2026). IDFPR quoted that provision in its April 1, 2026 consent order against Axiom.

24. The ICAA provides, in part, that: "[n]o collection agency shall operate in this State, directly or indirectly engage in the business of collecting debt, solicit debt claims for others, have a sales office, a client, or solicit a client in this State, exercise the right to collect, or receive payment for another of any debt, without obtaining a license under this Act . . . ." 205 ILCS 740/4.

25. The ICAA authorizes a civil penalty and provides that "[a]ny person who practices, offers to practice, attempts to practice, or holds oneself out to practice as a collection agency without being licensed under this Act shall, in addition to any other penalty provided by law, pay a civil penalty to the Department in an amount not to exceed $10,000 for each offense as determined by the Department." 205 ILCS 740/4.5.

26. On April 1, 2026, IDFPR entered a Consent Order and Cease-and-Desist Order against Axiom in Case No. 25 CC 146. In that order, IDFPR found that "prior to the date of this order, Axiom operated as a collection agency in Illinois without a Collection Agency Act license from 2019 through 2024," and that "Axiom's conduct, as described above, violates the Collection Agency Act." See *IDFPR Consent Order*, Exhibit B.

27. The order directed that "Axiom shall cease and desist all activity which requires licensure pursuant to Collection Agency Act unless and until it obtains licensure pursuant to the Collection Agency Act," and it imposed a fine of $12,500.

28. The order took effect on April 1, 2026, the date of the last signature. Axiom, through its Chief Executive Officer, signed the accompanying Agreement and Stipulation, and IDFPR's Director of the Division of Financial Institutions, Francisco Menchaca, signed on April 1, 2026.

29. Axiom held no ICAA license at any time relevant to its collection of Plaintiff's debt. After April 1, 2026, Axiom was also bound by an IDFPR Consent Order requiring it to cease

and desist all activity requiring licensure under the ICAA unless and until it obtained such licensure. Axiom did not thereafter obtain an ICAA license and, on information and belief, remained unlicensed through the filing of this Complaint.

30. Before entry of the IDFPR Consent Order, Plaintiff brought an action in the name of the People of the State of Illinois against Axiom, *People ex rel. Laskowski v. Axiom Financial Services, LLC*, Case No. 2025 CH 000045, in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, seeking injunctive relief for alleged violations of the ICAA.

31. The Circuit Court dismissed the verified complaint, finding that Axiom was not subject to the ICAA with respect to its foreclosure activity. Plaintiff timely appealed to the Illinois Appellate Court, Third District.

32. On July 28, 2026, the Appellate Court reversed the Circuit Court's dismissal judgment and remanded the case for further proceedings. See *People ex rel. Laskowski v. Axiom Financial Services, LLC*, 2026 IL App (3d) 250359.

33. The Appellate Court stated in its opinion,

> "Under the plain language of the Collection Agency Act, we conclude that defendant was required to register and acted as an unlicensed collection agency through the purchase of defaulted mortgage notes and bringing forth judicial foreclosure actions."

See *Appellate Court Opinion*, Exhibit C.

34. The Third District's holding confirms that Axiom's purchase of defaulted mortgage notes and its prosecution of judicial foreclosure actions, including the foreclosure action concerning Plaintiff's home described below, constituted collection-agency activity for which the ICAA required a license that Axiom never held.

**C. The Foreclosure Lawsuit**

35. PennyMac filed the foreclosure complaint concerning the Property on October 17, 2014, in the Circuit Court of DuPage County. The action, Case No. 2014 CH 001915, is now captioned *Axiom Financial Services, LLC v. Christina Beasley, et al.* (the "Foreclosure Lawsuit").

36. Axiom moved to substitute as the plaintiff in the Foreclosure Lawsuit on May 22, 2020, and the court granted the substitution on November 10, 2020, replacing the prior plaintiff, PMT NPL Financing 2014-1. Axiom continued its debt-collection action by prosecuting the foreclosure to sale through the attorneys and firms named in this Complaint.

**D. The Order Confirming Foreclosure Sale and Axiom's Illegal Debt Collection Activity**

37. In the Foreclosure Lawsuit, the Circuit Court entered an order approving the sale of the Property on January 16, 2026. Under Illinois law, upon confirmation of the sale the judgment stands satisfied to the extent of the sale price less expenses and costs, and the judicial sale, once confirmed, terminates the interests of the parties in the foreclosed real estate. See 735 ILCS 5/15-1508(f); 735 ILCS 5/15-1404.

38. Plaintiff moved to reconsider the Circuit Court's January 16, 2026 order. The Circuit Court entered its final order in the Foreclosure Lawsuit denying reconsideration on May 29, 2026. Plaintiff filed a notice of appeal on June 10, 2026.

39. From May 22, 2020 through at least June 17, 2026, Axiom prosecuted the Foreclosure Lawsuit and defended the relief it obtained there, while it lacked an ICAA collection-agency license.

40. Axiom's regulator, IDFPR, had formally determined that Axiom had operated as an unlicensed collection agency in Illinois and that its conduct violated the ICAA. Axiom voluntarily agreed to cease and desist all activity requiring ICAA licensure unless and until it obtained that licensure. See *IDFPR Consent Order*, Exhibit B.

41. Axiom remained unlicensed and continued prosecuting the Foreclosure Lawsuit and other Illinois foreclosure actions. The Third District later held that Axiom's purchase of defaulted mortgage notes and prosecution of judicial foreclosure actions constituted unlicensed collection-agency activity under the ICAA.

42. After the April 1, 2026 IDFPR Consent Order, Axiom took each of the following affirmative steps, through counsel, to continue prosecuting collection of the debt secured by Plaintiff's home while it remained unlicensed:

a. On April 8, 2026, Axiom appeared and sought further relief in the foreclosure.

b. On April 15, 2026, Axiom filed a responsive pleading opposing Plaintiff's motion to amend the motion to reconsider, by which Plaintiff sought to bring the IDFPR consent order before the state court.

c. On April 29, 2026, Axiom appeared for hearing proceedings.

d. On May 5, 2026, Axiom filed a notice of motion to set a hearing on the pending motion to reconsider the order approving sale, and gave no notice to Plaintiff's counsel.

e. On May 11, 2026, Axiom appeared at an ex parte hearing that resulted in entry of an order in furtherance of its collection action.

f. On May 20, 2026, Axiom filed a substantive response to a pending petition to vacate the judgment.

g. On May 21, 2026, Axiom filed supplemental exhibits in support of Axiom's position on that petition.

h. On May 29, 2026, Axiom appeared and continued to prosecute the foreclosure to a final order.

i. On June 17, 2026, Axiom appeared for a hearing on a petition to vacate the judgment based on the IDFPR Consent Order.

43. Each of these acts was an affirmative step in Axiom's continuing effort to obtain and preserve collection relief in the Foreclosure Lawsuit after the January 16, 2026 order approving sale and after the April 1, 2026 IDFPR Consent Order.

**E. Quinteros's and Halliday's Collection Conduct on Axiom's Behalf**

44. Until December 2025, Quintairos appeared as Axiom's counsel of record in the Foreclosure Lawsuit and regularly prosecuted Axiom's collection of Plaintiff's defaulted consumer mortgage debt through foreclosure litigation.

45. On December 5, 2025, within one year before Plaintiff filed this Complaint, Quintairos prosecuted Axiom's motion to confirm the judicial sale and sought foreclosure relief on Axiom's behalf. Plaintiff incurred attorneys' fees and costs in December 2025 and January 2026 opposing the confirmation relief sought in the motion Quintairos filed and prosecuted on Axiom's behalf.

46. After December 5, 2025, Halliday appeared as Axiom's counsel of record and continued prosecuting Axiom's collection efforts, including the post-April 1, 2026 activity alleged above.

47. After the April 1, 2026 IDFPR Consent Order was brought into the Foreclosure Lawsuit, Halliday knew or had notice that IDFPR had ordered Axiom to cease and desist all activity requiring ICAA licensure unless and until Axiom obtained the required license, yet Halliday continued to seek and defend collection relief on Axiom's behalf while Axiom remained unlicensed.

**F. FCI's Post-Sale Billing**

48. FCI began servicing Plaintiff's loan on or about March 16, 2020, after the loan was already in default, and communicated with Plaintiff about the debt on multiple occasions within one year before the filing of this Complaint. On information and belief, FCI sent Plaintiff periodic collection communications throughout its servicing, including semi-annual interest-rate-adjustment notices demanding monthly payments on the loan.

49. In September 2025, Plaintiff prepared and mailed FCI a request for information about the loan, at his own expense. On October 29, 2025, FCI mailed Plaintiff a written response. See *FCI's Letter dated October 29, 2025*, Exhibit D. In that response, FCI stated that Axiom is the current owner of the obligation, that no payments had been made during Axiom's ownership, and that the loan was due for the March 1, 2009 payment. FCI stated that it "is a debt collector and is attempting to collect a debt."

50. On November 5, 2025, FCI mailed Plaintiff another communication concerning the loan.

51. On June 2, 2026, FCI mailed Plaintiff a "Subsequent Interest Rate Adjustment" notice for account number 9160054326. *FCI's Letter dated June 2, 2026*, Exhibit E. The notice stated an unpaid principal balance of $1,000,000.00, a current interest rate of 7.50000000%, a total current monthly payment of $7,844.27, and an estimated new monthly payment of $7,801.22 due on August 1, 2026, based on a remaining loan term of 121 months. The notice directed Plaintiff on how to make payments and what to do if he anticipated problems making them.

52. The Circuit Court had already foreclosed the mortgage and confirmed the sale of the Property on January 16, 2026, months before FCI's June 2, 2026 notice. The order approving sale entered a deficiency judgment against Mark Laskowski for the amount of $1,388,142.56.

FCI's June 2, 2026 notice did not seek to collect that deficiency judgment. Instead, it billed Plaintiff for a $1,000,000 balance as though the loan remained an active, amortizing mortgage with a remaining term of 121 months and a monthly payment of $7,844.27. The foreclosed loan had no remaining term and no continuing monthly payment; the court had reduced the obligation to the confirmed sale and a fixed deficiency judgment.

53. FCI's representation that Plaintiff owed a $1,000,000 balance and a continuing monthly payment on a loan the court had already foreclosed and sold misstated the amount and legal status of the debt and demanded money Plaintiff did not owe. In response to FCI's ongoing collection of the debt, Plaintiff spent his own money, including the out-of-pocket costs of preparing and mailing his September 2025 information request and his subsequent disputes to FCI. FCI's June 2, 2026 notice also confronted Plaintiff with an imminent demand: a new monthly payment of $7,801.22 that FCI stated was due on August 1, 2026.

**G. The Defendants' Broader Pattern of Unlawful Collection Practices**

54. The Defendants' conduct toward Plaintiff reflects a business model, not an isolated event. Axiom acquires defaulted debts and collects on them in Illinois without a license, and it pursues collection through the same attorneys and the same servicer against multiple Illinois consumers.

55. In *Axiom Financial Services LLC v. Teak Barton*, No. 2025 CH 00742 (Circuit Court of Cook County, Illinois, filed January 22, 2025), Axiom pursued another Illinois foreclosure collection, and it continued to prosecute that collection after the April 1, 2026 cease-and-desist, including by filing a motion for security for costs on April 2, 2026, appearing through separate counsel on April 14, 2026, and filing a reply to affirmative defenses on May 27, 2026.

56. In *Axiom Financial Services, LLC v. Elio Vivacqua*, No. 2022 CH 09670, Axiom pursued another Illinois foreclosure collection on a defaulted mortgage debt it had acquired.

Axiom operated as an unlicensed collection agency throughout the period IDFPR identified, and it collected against these consumers as it did against Plaintiff. Plaintiff will identify additional consumers as discovery proceeds.

57. Axiom, Quintairos, Halliday, and FCI associated with one another and with prior owners of the debt to carry out this course of collection over a period of years, and the conduct threatens to continue against other consumers. The Defendants' collection caused Plaintiff concrete, out-of-pocket monetary damages:

a. Plaintiff paid $38,300.00 in attorneys' fees and $1,086.91 in litigation-related costs (court costs, transcript fees, etc.) in defending against the challenged collection activities prosecuted by Axiom and Quintairos, totaling $39,386.91.

b. Plaintiff paid $13,680.00 in attorneys' fees and $3,701.49 in litigation-related costs (court costs, transcript fees, etc.) in defending against the challenged collection activities prosecuted by Axiom and Halliday, totaling $17,381.49.

c. Plaintiff paid the out-of-pocket costs of preparing and mailing his September 2025 information request and his subsequent disputes to FCI, in an amount of $10.48.

**H. Axiom's Discrete Collection Acts Within the Limitations Period**

58. Within one year before the filing of this Complaint, Axiom undertook separate affirmative collection acts directed toward obtaining Plaintiff's money or property, including the acts alleged below.

59. Within the limitations period, Axiom caused notices to be issued scheduling and threatening a judicial sale of Plaintiff's residence as a means of collecting the defaulted mortgage debt.

60. On September 4, 2025, Axiom caused the judicial sale of Plaintiff's residence to be conducted and participated in the sale by bidding for and acquiring the Property through the foreclosure process.

61. After the sale, Axiom moved to confirm the judicial sale and represented, expressly or by necessary implication, that it was legally entitled to invoke Illinois judicial foreclosure remedies and obtain the requested relief notwithstanding its unlicensed status.

62. In connection with confirmation, Axiom sought possession of the Property and a personal deficiency judgment. The parties agreed upon the amount of the deficiency reflected in the order approving sale; Plaintiff does not base his FDCPA claim on any contention that the agreed deficiency amount itself was unauthorized.

63. Axiom opposed Plaintiff's efforts to prevent confirmation and continued to press for the benefits of the foreclosure sale while Plaintiff expressly challenged Axiom's authority to collect without the license required by the ICAA.

64. On January 16, 2026, Axiom obtained the order confirming the judicial sale. Axiom thereafter continued taking affirmative post-confirmation steps to preserve and enforce the collection relief, including the April through June 2026 acts alleged above.

65. Axiom also continued collection through its authorized servicer, FCI. On June 2, 2026, while Axiom remained unlicensed and bound by the IDFPR Consent Order, FCI sent Plaintiff a payment-oriented mortgage billing communication while acting, in its own words, as Axiom's authorized servicing agent working at Axiom's direction.

66. Each foregoing act occurred within the limitations period and is alleged as a discrete collection act. Plaintiff seeks damages arising from those acts and does not seek review, reversal, vacation, or modification of any state-court judgment or order.

## COUNT I

### Fair Debt Collection Practices Act (Axiom)

67. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

68. Plaintiff is a consumer, the obligation is a debt, and Axiom is a debt collector within the meaning of 15 U.S.C. § 1692a. Axiom's principal purpose is the acquisition and collection of defaulted debts, including through judicial foreclosure. In its Form LLC-45.5 Application for Admission to Transact Business in Illinois, Axiom stated that its proposed business purpose was "Debt collection and Debt purchasing." See Exhibit A.

69. Illinois law prohibited Axiom from engaging in collection-agency activity in Illinois without the registration and license required by the ICAA. At all relevant times, Axiom lacked that license. Beginning April 1, 2026, Axiom was additionally bound by an IDFPR Consent Order requiring it to cease and desist all activity requiring ICAA licensure unless and until it became licensed.

70. Within one year before the filing of this Complaint, Axiom engaged in the following collection conduct in violation of the FDCPA:

a. In violation of 15 U.S.C. § 1692e(5), Axiom caused notices to be issued scheduling and threatening the judicial sale of Plaintiff's residence and otherwise threatened future foreclosure and possession remedies while Axiom lacked the license Illinois law required for the underlying collection activity. Those communications threatened collection action that Axiom could not legally take while operating as an unlicensed collection agency.

b. In violation of 15 U.S.C. §§ 1692e and 1692e(10), Axiom used false, deceptive, or misleading representations or means by invoking judicial foreclosure procedures and

representing, expressly or by necessary implication, that it possessed lawful authority to employ those procedures to collect Plaintiff's debt while Axiom remained unlicensed.

c. Axiom's conduct under §§ 1692e and 1692e(10) included causing the September 4, 2025 judicial sale; bidding for and acquiring the Property through that sale; moving to confirm the sale; seeking possession and a deficiency judgment; opposing Plaintiff's efforts to prevent confirmation; procuring the January 16, 2026 confirmation order; and taking the post-confirmation collection steps alleged above.

d. In violation of 15 U.S.C. § 1692f, Axiom used unfair or unconscionable means to collect or attempt to collect the debt by actually employing judicial collection machinery to sell and acquire Plaintiff's residence, obtain confirmation, seek possession and deficiency relief, and preserve those remedies while Axiom lacked the license required for its collection activity.

e. After April 1, 2026, Axiom continued affirmative collection activity while subject to an IDFPR Consent Order expressly requiring it to cease and desist all activity requiring ICAA licensure unless and until it became licensed. Axiom's post-order filings, appearances, and attempts to preserve or enforce foreclosure relief are further discrete violations of §§ 1692e(10) and 1692f and, to the extent they threatened additional future collection remedies, § 1692e(5).

f. Axiom is also liable for collection undertaken at its direction by its authorized servicer, FCI, including the June 2, 2026 payment-oriented billing communication alleged above, to the extent that communication was sent as a means of collecting Plaintiff's debt while Axiom remained unlicensed and bound by the IDFPR Consent Order.

71. Plaintiff does not allege in this Count that the amount of the deficiency ultimately agreed by the parties was itself unauthorized, and Plaintiff does not assert an Axiom claim under § 1692f(1) based on the amount of that agreed deficiency.

72. Each act identified above occurred within one year before the filing of this Complaint. See 15 U.S.C. § 1692k(d).

73. Axiom's violations caused Plaintiff actual and concrete monetary harm. Under 15 U.S.C. § 1692k(a)(1), Plaintiff seeks all actual damages proximately caused by Axiom's actionable collection conduct. Plaintiff incurred $51,980.00 in attorneys' fees and $4,788.40 in litigation-related costs in responding to and defending against the challenged collection activity undertaken by Axiom directly and through its collection counsel, for presently quantified actual economic damages of at least $56,768.40 attributable to Axiom. Plaintiff also seeks any additional actual damages proven to have been caused by Axiom's FDCPA violations. In addition to actual damages, Plaintiff seeks the additional statutory damages permitted by 15 U.S.C. § 1692k(a)(2)(A), together with the costs of this action and a reasonable attorney's fee under 15 U.S.C. § 1692k(a)(3).

## COUNT II

### Fair Debt Collection Practices Act (Halliday, Watkins & Mann, P.C.)

74. Plaintiff realleges and incorporates all preceding paragraphs.

75. Halliday is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) because it regularly collects consumer debts through mortgage-default and foreclosure litigation. The FDCPA applies to attorneys who regularly engage in consumer-debt collection through litigation. See *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).

76. Halliday's liability is based on Halliday's own affirmative debt-collection acts, representations, threats, filings, appearances, and use of judicial process in connection with Plaintiff's debt, and is not alleged merely by virtue of Halliday's status as counsel for Axiom or derivatively from Axiom's violation of the ICAA.

77. After Halliday appeared as Axiom's counsel of record in December 2025, Halliday personally continued prosecuting Axiom's collection of Plaintiff's defaulted consumer mortgage debt. After April 1, 2026, and after the IDFPR Consent Order was placed at issue in the Foreclosure Lawsuit, Halliday continued to seek, preserve, and defend foreclosure collection relief on Axiom's behalf while Axiom remained unlicensed and subject to an express order requiring Axiom to cease and desist all activity requiring ICAA licensure unless and until licensed. Halliday's limitations-period conduct included the April 8, April 15, April 29, May 5, May 11, May 20, May 21, May 29, and June 17, 2026 acts alleged above.

78. Halliday violated 15 U.S.C. § 1692e(5) to the extent that, through its motions, appearances, demands, and prosecution of the Foreclosure Lawsuit, Halliday threatened or sought additional judicial collection remedies on Axiom's behalf that Axiom could not legally pursue while engaging in collection activity without the license required by Illinois law and while subject to the April 1, 2026 IDFPR Consent Order.

79. Halliday violated 15 U.S.C. §§ 1692e and 1692e(10) by using representations and judicial process to continue collecting Plaintiff's debt and by expressly or implicitly representing that Axiom possessed lawful authority to invoke and obtain those collection remedies notwithstanding Axiom's unlicensed status and the IDFPR Consent Order.

80. Halliday violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect Plaintiff's debt, including the continued use of judicial foreclosure

process to obtain, preserve, or enforce collection relief for Axiom after Halliday had notice of the regulatory determination and IDFPR Consent Order and while Axiom remained unlicensed.

81. Each act alleged against Halliday occurred within one year before Plaintiff filed this Complaint and is alleged as a discrete affirmative collection act. See 15 U.S.C. § 1692k(d).

82. Halliday's violations caused Plaintiff actual and concrete monetary harm. Under 15 U.S.C. § 1692k(a)(1), Plaintiff seeks all actual damages proximately caused by Halliday's actionable collection conduct. Plaintiff incurred $13,680.00 in attorneys' fees and $3,701.49 in litigation-related costs in responding to and defending against the collection activity prosecuted by Halliday, for presently quantified actual economic damages of at least $17,381.49 attributable to Halliday. Plaintiff also seeks any additional actual damages proven to have been caused by Halliday's FDCPA violations. In addition to actual damages, Plaintiff seeks the additional statutory damages permitted by 15 U.S.C. § 1692k(a)(2)(A), together with the costs of this action and a reasonable attorney's fee under 15 U.S.C. § 1692k(a)(3).

## COUNT III

### Fair Debt Collection Practices Act (Quintairos, Prieto, Wood & Boyer, P.A.)

83. Plaintiff realleges and incorporates all preceding paragraphs.

84. Quintairos is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) because it regularly collects consumer debts through mortgage-default and foreclosure litigation. The FDCPA applies to attorneys who regularly engage in consumer-debt collection through litigation. See *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).

85. Quintairos's liability is based on Quintairos's own affirmative debt-collection acts, representations, threats, filings, and use of judicial process in connection with Plaintiff's debt, and

is not alleged merely because Quintairos represented Axiom or derivatively from Axiom's violation of the ICAA.

86. Within the limitations period, while serving as Axiom's foreclosure counsel, Quintairos personally prosecuted Axiom's judicial collection of Plaintiff's defaulted mortgage debt, including the judicial-sale and confirmation process, Axiom's request for possession and a deficiency judgment, and Axiom's December 5, 2025 motion to confirm the judicial sale. Those actions sought to obtain Plaintiff's money and property through judicial process on behalf of Axiom while Axiom lacked the ICAA license required for the collection activity at issue.

87. Quintairos violated 15 U.S.C. § 1692e(5) to the extent that its sale-related notices, motions, demands, and prosecution of further foreclosure remedies threatened judicial collection action on Axiom's behalf that Axiom could not legally pursue while engaging in collection activity without the license required by Illinois law.

88. Quintairos violated 15 U.S.C. §§ 1692e and 1692e(10) by using representations and judicial process to collect Plaintiff's debt and by expressly or implicitly representing that Axiom possessed lawful authority to invoke and obtain foreclosure-sale, confirmation, possession, and personal collection remedies notwithstanding Axiom's unlicensed status.

89. Quintairos violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect Plaintiff's debt, including prosecuting the judicial-sale and confirmation process and seeking possession and deficiency relief for Axiom through collection activity for which Axiom lacked the license required by Illinois law.

90. Each act alleged against Quintairos occurred within one year before Plaintiff filed this Complaint and is alleged as a discrete affirmative collection act. See 15 U.S.C. § 1692k(d).

91. Quintairos's violations caused Plaintiff actual and concrete monetary harm. Under 15 U.S.C. § 1692k(a)(1), Plaintiff seeks all actual damages proximately caused by Quintairos's actionable collection conduct. Plaintiff incurred $38,300.00 in attorneys' fees and $1,086.91 in litigation-related costs in responding to and defending against the collection activity prosecuted by Quintairos, including the sale-confirmation and related collection relief, for presently quantified actual economic damages of at least $39,386.91 attributable to Quintairos. Plaintiff also seeks any additional actual damages proven to have been caused by Quintairos's FDCPA violations. In addition to actual damages, Plaintiff seeks the additional statutory damages permitted by 15 U.S.C. § 1692k(a)(2)(A), together with the costs of this action and a reasonable attorney's fee under 15 U.S.C. § 1692k(a)(3).

## COUNT IV

### Fair Debt Collection Practices Act (FCI Lender Services, Inc.)

92. Plaintiff realleges and incorporates all preceding paragraphs.

93. FCI is a debt collector under 15 U.S.C. § 1692a(6) because it began servicing Plaintiff's loan after the loan was in default and regularly collects debts owed or due another. FCI also stated in its written communications that it "is a debt collector and is attempting to collect a debt."

94. FCI violated 15 U.S.C. § 1692e(2)(A) by misrepresenting the amount and legal status of the debt; § 1692e(10) by using deceptive means to collect; and §§ 1692f and 1692f(1) by using unfair means and attempting to collect an amount not owed, when it represented on June 2, 2026 that Plaintiff owed a $1,000,000 balance and a current monthly payment of $7,844.27 on a loan the court had already foreclosed and sold, and demanded an estimated new monthly payment of $7,801.22 due on August 1, 2026.

95. FCI's June 2, 2026 notice was not a mere required disclosure. It demanded a specific monthly payment, stated a due date of August 1, 2026, gave instructions on how to make payments and whom to contact about payment problems, and stated on its face that "FCI is a debt collector and is attempting to collect a debt." Its animating purpose was to collect. Moreover, once the court foreclosed the mortgage and confirmed the sale, the loan was no longer an active adjustable-rate mortgage requiring a periodic rate-adjustment disclosure, so the notice did not fulfill any disclosure obligation; it misrepresented an extinguished loan as active and demanded payment on it.

96. FCI's communications occurred within one year before Plaintiff filed this Complaint. See 15 U.S.C. § 1692k(d).

97. FCI's course of collection caused Plaintiff actual and concrete monetary harm. Under 15 U.S.C. § 1692k(a)(1), Plaintiff seeks all actual damages proximately caused by FCI's actionable collection communications, including the out-of-pocket costs of preparing and mailing his September 2025 information request and subsequent disputes to FCI. The precise amount of those FCI-specific actual damages will be established through receipts and other proof. Plaintiff also seeks any additional actual damages proven to have been caused by FCI's FDCPA violations. In addition to actual damages, Plaintiff seeks the additional statutory damages permitted by 15 U.S.C. § 1692k(a)(2)(A), together with the costs of this action and a reasonable attorney's fee under 15 U.S.C. § 1692k(a)(3).

## COUNT V

**Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.**
**(Axiom and FCI)**

98. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

99. Axiom and FCI engaged in trade or commerce within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") by acquiring, servicing, enforcing, and attempting to collect Plaintiff's consumer mortgage debt in Illinois.

100. The acts alleged in this Count occurred within three years before the filing of this Complaint. Earlier conduct is alleged as background concerning Defendants' course of conduct, knowledge, and intent.

101. Axiom participated directly in the deceptive and unfair conduct alleged in this Count. While operating without an ICAA license, Axiom invoked foreclosure and other collection remedies and represented, expressly and by implication, that it possessed lawful authority to employ those remedies. Axiom did not disclose that it lacked the collection-agency license required for the collection activity it was pursuing. Axiom intended that Plaintiff and others treat its collection demands and requested remedies as lawfully authorized.

102. Within the ICFA limitations period, Axiom engaged in the following separate acts of deceptive, abusive, oppressive, and fraudulent-in-nature debt-collection conduct:

a. During 2024, while unlicensed, Axiom continued prosecuting the foreclosure and obtained foreclosure relief while presenting itself as legally entitled to employ Illinois judicial collection remedies and without disclosing that it lacked the ICAA license required for its collection activity. Plaintiff alleges that this conduct was deceptive and fraudulent in nature because Axiom invoked judicial collection authority while omitting its lack of the required license, and abusive and oppressive because it subjected Plaintiff to continued foreclosure collection activity by an unlicensed collection agency.

b. In 2025, while still unlicensed, Axiom caused notices to issue scheduling and threatening the judicial sale of Plaintiff's residence. Plaintiff alleges that those notices conveyed that

Axiom possessed lawful authority to force a judicial sale to collect the debt while concealing or omitting that Axiom lacked the required ICAA license, and that the threatened loss of Plaintiff's residence constituted abusive and oppressive collection pressure.

c. On September 4, 2025, Axiom caused the judicial sale of Plaintiff's residence to proceed, bid at the sale, and acquired the Property through the foreclosure process while remaining unlicensed. Plaintiff alleges that Axiom thereby represented, expressly and by necessary implication, that it was legally entitled to exercise those collection remedies, while omitting its lack of the required license, and used the coercive judicial-sale process to obtain Plaintiff's property.

d. After the September 4, 2025 sale, Axiom moved to confirm the judicial sale and sought possession of the Property and a personal deficiency judgment while remaining unlicensed. Plaintiff alleges that these demands represented that Axiom was legally entitled to obtain further judicial collection relief, concealed or omitted Axiom's lack of the required license, and subjected Plaintiff to the threatened loss of possession and additional personal monetary liability.

e. On January 16, 2026, Axiom obtained the order confirming the judicial sale while remaining unlicensed. Plaintiff alleges that Axiom obtained that collection relief by continuing to present itself as legally entitled to invoke Illinois foreclosure remedies notwithstanding its lack of the required ICAA license.

f. By April 1, 2026, IDFPR had determined that Axiom operated as an unlicensed collection agency, and Axiom had agreed to cease and desist all activity requiring ICAA licensure unless and until it became licensed. Axiom nevertheless remained unlicensed and

continued to prosecute and defend the foreclosure relief through the April 8, April 15, April 29, May 5, May 11, May 20, May 21, May 29, and June 17, 2026 acts alleged above. Plaintiff alleges that this post-Consent-Order conduct was deceptive and fraudulent in nature because Axiom continued to invoke and defend collection authority despite the regulatory determination and its own cease-and-desist agreement, and was abusive, oppressive, and unscrupulous because it forced Plaintiff to incur additional expense resisting continued collection activity.

g. Axiom continued collection activity through its servicing relationship with FCI while Axiom remained unlicensed and subject to the IDFPR Consent Order. Plaintiff alleges that Axiom's continued use of its servicing agent to communicate collection demands conveyed continuing lawful collection authority while omitting Axiom's unlicensed status and the restrictions imposed by the Consent Order.

103. Axiom's conduct was unfair within the meaning of 815 ILCS 505/2. The conduct offended the public policy embodied in the ICAA, subjected Plaintiff to judicial collection activity by an unlicensed collection agency, and caused substantial consumer injury, including attorneys' fees, litigation costs, and other expenditures incurred to resist and respond to the challenged collection activity.

104. Axiom acted with full knowledge of its unlicensed status. The April 1, 2026 Consent Order gave Axiom actual notice that IDFPR had determined it operated as an unlicensed collection agency, had found that its conduct violated the ICAA, and had ordered it to cease and desist all activity requiring ICAA licensure unless and until it obtained the required license. Axiom nevertheless remained unlicensed and continued affirmative collection activity, and it thereby forced Plaintiff to keep defending against that activity at his own expense.

105. FCI engaged in deceptive and unfair conduct in trade or commerce. On June 2, 2026, after confirmation of the foreclosure sale, FCI sent Plaintiff a payment-oriented communication stating that Plaintiff owed a $1,000,000 mortgage balance, that the loan had a remaining term of 121 months, that the current monthly payment was $7,844.27, and that an estimated new monthly payment of $7,801.22 was due on August 1, 2026. FCI provided payment instructions and stated that it was a debt collector attempting to collect a debt. Plaintiff alleges those representations were deceptive because the mortgage had been foreclosed and sold and the obligation had been reduced to the confirmed foreclosure disposition and fixed deficiency rather than an ongoing amortizing mortgage requiring monthly payments. FCI intended that Plaintiff act upon the payment demand.

106. Plaintiff alleges that FCI's June 2, 2026 conduct was also unfair, abusive, oppressive, and unscrupulous because it demanded continuing mortgage payments after the mortgage had been foreclosed and the sale confirmed, exposed Plaintiff to additional collection pressure, and required Plaintiff to incur time and expense investigating and disputing the demand.

107. The representations and omissions alleged against Axiom and FCI were material to the collection activity. Plaintiff incurred attorneys' fees, litigation costs, and other out-of-pocket expenses to resist, investigate, and respond to the challenged conduct.

108. Axiom's and FCI's conduct proximately caused Plaintiff actual economic damages. Under 815 ILCS 505/10a(a), Plaintiff seeks actual economic damages of at least $56,768.40, consisting of $51,980.00 in attorneys' fees and $4,788.40 in litigation-related costs incurred in responding to and defending against the unlawful collection activity alleged herein. Plaintiff additionally seeks the FCI-specific out-of-pocket mailing and dispute costs alleged above, the amount of which will be established by supporting proof, together with any other actual economic

damages proven to have been proximately caused by conduct actionable under the ICFA. Plaintiff does not seek duplicative recovery of the same economic loss under multiple counts or against multiple Defendants.

109. Plaintiff alleges that the foregoing conduct was knowing, willful, and persistent. Plaintiff seeks punitive damages and such other relief as permitted under 815 ILCS 505/10a(a) and applicable law.

110. If Plaintiff prevails on Count V, Plaintiff further seeks reasonable attorneys' fees and costs incurred in prosecuting this action as permitted by 815 ILCS 505/10a(c). Those prevailing-party fees and costs are separate from, and are not included in, the $56,768.40 presently quantified actual-damages amount.

**PRAYER FOR RELIEF**

Plaintiff Mark Edward Laskowski respectfully requests that the Court enter judgment in his favor and against the defendants as follows:

A. On Count I against Axiom, actual damages under 15 U.S.C. § 1692k(a)(1), including presently quantified actual economic damages of at least $56,768.40; additional statutory damages as permitted by 15 U.S.C. § 1692k(a)(2)(A); and the costs of this action and a reasonable attorney's fee under 15 U.S.C. § 1692k(a)(3);

B. On Count II against Halliday, actual damages under 15 U.S.C. § 1692k(a)(1), including presently quantified actual economic damages of at least $17,381.49; additional statutory damages as permitted by 15 U.S.C. § 1692k(a)(2)(A); and the costs of this action and a reasonable attorney's fee under 15 U.S.C. § 1692k(a)(3);

C. On Count III against Quintairos, actual damages under 15 U.S.C. § 1692k(a)(1), including presently quantified actual economic damages of at least $39,386.91; additional statutory

damages as permitted by 15 U.S.C. § 1692k(a)(2)(A); and the costs of this action and a reasonable attorney's fee under 15 U.S.C. § 1692k(a)(3);

D. On Count IV against FCI, all actual damages proven under 15 U.S.C. § 1692k(a)(1), including FCI-specific out-of-pocket mailing and dispute costs; additional statutory damages as permitted by 15 U.S.C. § 1692k(a)(2)(A); and the costs of this action and a reasonable attorney's fee under 15 U.S.C. § 1692k(a)(3);

E. On Count V against Axiom and FCI, actual economic damages under 815 ILCS 505/10a(a), including at least $56,768.40 in presently quantified attorneys' fees and litigation-related costs, plus FCI-specific out-of-pocket costs and any additional actual economic damages proven at trial; punitive damages and such other relief as the Court deems proper under 815 ILCS 505/10a(a) and applicable law; and, if Plaintiff prevails, reasonable attorneys' fees and costs incurred in this action under 815 ILCS 505/10a(c);

F. Pre-judgment and post-judgment interest as allowed by law;

G. All damages awarded without duplicative recovery for the same injury, including where the same underlying attorneys' fees or litigation costs are attributable to more than one liable Defendant; and

H. Such other and further relief as the Court deems just.

Plaintiff does not request, and the Court is not asked to enter, any order that reviews, vacates, reverses, or otherwise disturbs the foreclosure judgment or the order approving sale entered in Case No. 2014 CH 001915.

**JURY DEMAND**

Plaintiff demands trial by jury on all claims so triable.

Respectfully submitted,

***/s/ Scott J. Oh***

Scott J. Oh, Esq.
Law Offices of Scott J. Oh, LLC
Attorney for Plaintiff Mark Edward Laskowski
5 Revere Drive, Ste. 200
Northbrook, Illinois 60062
(773) 931-6630
sjo@sjolaw.com
ARDC No. 6244232