**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

MARK EDWARD LASKOWSKI,

Plaintiff,

CASE NO. 1:26-cv-10027

vs.

AXIOM FINANCIAL SERVICES, LLC;
HALLIDAY, WATKINS & MANN, P.C.;
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.; FCI LENDER SERVICES, INC.

Defendants.

**DEFENDANT HALLIDAY, WATKINS & MANN, P.C.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNT II OF PLAINTIFF'S COMPLAINT**

Defendant Halliday, Watkins & Mann, P.C. ("HWM"), by its undersigned counsel, submits this Memorandum of Law in support of its Motion to Dismiss Count II of the Complaint filed by Plaintiff Mark Edward Laskowski ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Count II is a state licensing claim against Axiom Financial Services, LLC ("Axiom") recast as a FDCPA against HWM. Plaintiff does not allege that HWM misstated the amount of his debt, contacted him improperly, threatened him, or said anything untrue in the DuPage County foreclosure case. He alleges that HWM, as Axiom's counsel of record in a foreclosure case pending since 2014, appeared at hearings, responded to motions, and defended an order approving sale that the state court had already entered, and that this ordinary litigation conduct violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, because

Axiom lacked a license under the Illinois Collection Agency Act ("ICAA"), 205 ILCS 740/1 *et seq.* (Compl. ¶¶ 77–80.)

Plaintiff's theories fail as a matter of law. First, the ICAA expressly exempts licensed attorneys, 205 ILCS 740/2.03(5), and both the Illinois Appellate Court and this District have held that a law firm does not violate the FDCPA by litigating on behalf of a client that lacks an ICAA license. *Gibbs v. Blitt & Gaines, P.C.*, 2014 IL App (1st) 123681, ¶ 15; *Manlangit ex rel. Manlangit v. FCI Lender Services, Inc., 19-CV-03265, 2020 WL 5570092,(N.D. Ill. Sept. 16, 2020)*. The Seventh Circuit has made clear that "§1692f creates its own rules (or authorizes courts and the FTC to do so); it does not so much as hint at being an enforcement mechanism for other rules of state and federal law." *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007).

Second, Plaintiff's theories fail because every act Plaintiff attributes to HWM occurred between April 8, 2026 and June 17, 2026, after the foreclosure was complete. (Compl. ¶ 77.) Throughout that period, the only judicial decision to address the question had held that Axiom was *not* subject to the ICAA with respect to its foreclosure activity. (*Id.* ¶ 31; Compl. Ex. C ¶ 7.) The trial court finding that Axiom was not subject to the ICAA was not reversed by the Illinois Appellate Court until July 28, 2026, six weeks after the last act alleged against HWM. (Compl. ¶ 32.)

Third, under *LVNV Funding, LLC v. Trice*, 2015 IL 116129, a collection agency's failure to obtain an ICAA license does not deprive an Illinois court of the power to grant it relief. Advocating a client's entitlement to relief that the law permitted, and that the state court had in fact granted, is not a false representation, a threat to take action that cannot legally be taken, or an unfair practice. For all of the foregoing reasons, Count II should be dismissed with prejudice.

## FACTUAL BACKGROUND

### A. The Foreclosure Lawsuit

PennyMac filed a foreclosure complaint concerning Plaintiff's property in the Circuit Court of DuPage County in October 2014. (Compl. ¶ 35.) Axiom acquired the loan and was substituted as plaintiff in November 2020 (the "Foreclosure Lawsuit"). (*Id.* ¶¶ 18, 36.) The property was sold at judicial sale on September 4, 2025, and on January 16, 2026, the circuit court entered an order approving the sale (“final order”), which included a deficiency judgment in an amount the parties agreed upon. (*Id.* ¶¶ 37, 52, 60, 62.) Plaintiff moved to reconsider; the circuit court denied reconsideration on May 29, 2026, and Plaintiff appealed. (*Id.* ¶ 38.) Plaintiff was represented by counsel throughout. (*See id.* ¶¶ 42(d), 57.) Quintairos, Prieto, Wood & Boyer, P.A. ("Quintairos") represented Axiom until December 2025, and HWM appeared as Axiom's counsel thereafter. (*Id.* ¶¶ 11, 44, 46.)

### B. The Separate Licensing Litigation and the IDFPR Consent Order

In March 2025, Plaintiff filed a separate action in the name of the People of the State of Illinois, *People ex rel. Laskowski v. Axiom Financial Services, LLC*, No. 2025 CH 000045 (Cir. Ct. DuPage County.), seeking to enjoin Axiom from operating as an unlicensed collection agency. (Compl. ¶ 30; Compl. Ex. C ¶ 3.) The circuit court dismissed that complaint with prejudice, "finding that Axiom was not subject to the ICAA with respect to its foreclosure activity." (Compl. ¶ 31; *see* Compl. Ex. C ¶ 7 (trial court found "that defendant would never be subject to Collection Agency Act registration under the circumstances").) Plaintiff appealed. (Compl. ¶ 31.)

Plaintiff also reported Axiom to the Illinois Department of Financial and Professional Regulation ("IDFPR"). While the aforementioned appeal was pending, on April 1, 2026, Axiom

and IDFPR entered into a Consent Order reciting that Axiom "operated as a collection agency in Illinois without a Collection Agency Act license from 2019 through 2024," imposing a $12,500 fine, and directing that Axiom "cease and desist all activity which requires licensure pursuant to Collection Agency Act unless and until it obtains licensure." (Compl. ¶¶ 26–27; Dkt. 1-2 at 2–3.) The Consent Order does not mention foreclosure, mortgage loans, Plaintiff, or HWM, and by its terms it is binding only "upon Axiom and the Department." (Dkt. 1-2 at 3.)

On July 28, 2026, the Third District reversed the dismissal of the *People ex rel.* action. In doing so, the court acknowledged "the possibility that the legislature did not contemplate the purchase of mortgage debt and the enforcement of that security interest through judicial foreclosure when drafting the Collection Agency Act." *Id.* ¶ 17. The court also denied Plaintiff's request to consider the IDFPR Consent Order, observing that it "is not authoritative or precedential." *Id.* ¶10.

**C. The single Count against HWM**

Count II alleges that HWM is a "debt collector" and that, after the Consent Order "was placed at issue in the Foreclosure Lawsuit," HWM "continued to seek, preserve, and defend foreclosure collection relief on Axiom's behalf while Axiom remained unlicensed." (Compl. ¶¶ 75, 77.) The conduct identified consists of appearances and filings in the Foreclosure Lawsuit on nine dates between April 8 and June 17, 2026: appearing at hearings, opposing Plaintiff's motion to amend his motion to reconsider, filing a notice of motion, responding to a petition to vacate the judgment, and filing supplemental exhibits in support of that response. (*Id.* ¶¶ 42, 77.) Plaintiff alleges that this conduct violated § 1692e(5) "to the extent" it sought remedies "that Axiom could not legally pursue" while unlicensed (*id.* ¶ 78); violated §§ 1692e and 1692e(10) by "expressly or implicitly representing that Axiom possessed lawful authority" to obtain relief

"notwithstanding Axiom's unlicensed status and the IDFPR Consent Order" (*id.* ¶ 79); and violated § 1692f through "the continued use of judicial foreclosure process" after HWM had notice of the Consent Order "and while Axiom remained unlicensed" (*id.* ¶ 80). Although Plaintiff asserts that HWM's liability is "not alleged merely by virtue of Halliday's status as counsel for Axiom or derivatively from Axiom's violation of the ICAA" (*id.* ¶ 76), every theory of violation in Count II turns on Axiom's license status. (*Id.* ¶¶ 77–80.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" are not entitled to the assumption of truth. *Id.* Exhibits attached to the complaint are part of the pleading for all purposes, Fed. R. Civ. P. 10(c), and where an exhibit contradicts the complaint's allegations, the exhibit controls. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

## ARGUMENT

### I. COUNT II IMPERMISSIBLY USES THE FDCPA TO ENFORCE A STATE LICENSING STATUTE THAT DOES NOT APPLY TO HWM.

### *A. The ICAA Exempts Licensed Attorneys, and a Law Firm Does Not Violate the FDCPA by Representing an Unlicensed Client.*

The ICAA's licensing requirement applies to collection agencies. 205 ILCS 740/4. The Act expressly exempts licensed attorneys at law. *See* 205 ILCS 740/2.03(5). The ICAA, moreover, expressly contemplates that a debt buyer may retain "an attorney-at-law for litigation in order to collect such debt," 205 ILCS 740/2 (defining "debt buyer"); *see* Compl. Ex. C ¶ 15, placing the licensing obligation on the debt buyer, not on the lawyer it hires.

Applying that exemption, the Illinois Appellate Court has already rejected precisely the theory Plaintiff advances here. In *Gibbs*, the plaintiff alleged that a law firm violated the FDCPA by filing a collection suit on behalf of a collection agency that was not licensed under the ICAA. The court held "a law firm comprised of licensed attorneys who file suits on behalf of collection agencies. As such, we find that it is exempt from the requirements of the Illinois Act pursuant to the above provision. Since Blitt & Gaines committed no violation of the Illinois Act, and therefore engaged in no misconduct by filing CACH's claim, Gibbs' contention that the firm violated the FDCPA cannot stand." *Gibbs v. Blitt & Gaines, P.C.*, 2014 IL App (1st) 123681, ¶ 15, 6 N.E.3d 755, 759. The Court in *Gibbs* went on to add that "the FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation." *Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir.2004); *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir.2007) (the FDCPA "creates its own rules" and "does not so much as hint at being an enforcement mechanism for other rules of state and federal law" *Id*. at 16.

Similar to this current case before this Court, in *Manlangit ex rel. Manlangit v. FCI Lender Services, Inc.*, 19-CV-03265, 2020 WL 5570092, a plaintiff alleged that the law firm representing the debt buyer in a state court foreclosure matter had similarly violated the FDCPA by representing an entity that it alleged had violated the ICAA. The court in that matter applied the holding from *Gibbs*. It held "The Barham defendants cannot violate the FDCPA by failing to comply with the ICAA, however, because attorneys are expressly exempted from the requirements of the ICAA. The Barham defendants are thus dismissed entirely from Count I. *Id* at 5.

The same result follows here. HWM is a law firm that appeared in the Foreclosure Lawsuit as Axiom's counsel of record. (Compl. ¶¶ 11, 46.) As a firm of licensed attorneys, HWM is exempt from the ICAA and committed no violation of it. HWM therefore cannot have violated the FDCPA by merely representing Axiom in the Foreclosure Lawsuit.

***B. The FDCPA Is Not an Enforcement Mechanism for the ICAA.***

*Gibbs* and *Manlangit* are consistent with settled Seventh Circuit law. Section 1692f "does not so much as hint at being an enforcement mechanism for other rules of state and federal law," and "Section 1692f does not take a state-law dispute and move it to federal court, even though the amount in controversy is well under $75,000 and the parties are not of diverse citizenship." *Beler at* 474.

In a similar case, the plaintiff sued the defendant under the FDCPA for an ICAA violation. In that case, the Court held yet again that when "[a]s in *Washington*, Plaintiffs are attempting to use the FDCPA as an enforcement mechanism for the ICAA. That is not a permissible use of the FDCPA, and Count V therefore fails to state a claim to the extent it is based on alleged violations of the ICAA." *Bentrud*, 794 F.3d at 875; *Evory*, 505 F.3d at 778; *Beler*, 480 F.3d at 473; *Washington*, 2008 WL 4280139, at *2. *Eul v. Transworld Sys.*, 15 C 7755, 2017 WL 1178537, at *12 (N.D. Ill. Mar. 30, 2017)

That principle applies with particular force here, because Plaintiff would use the FDCPA to impose on attorneys a licensing compliance duty that the General Assembly deliberately declined to impose. Nothing in the FDCPA requires a lawyer to verify a client's state licensure, to police the client's compliance with an administrative consent order, or to abandon a client in the middle of pending litigation, which Illinois counsel may not do without leave of court in any event. *See* Ill. S. Ct. R. 13(c)(2).

### C. Plaintiff Cannot Plead Around *Gibbs* by Labeling HWM's Litigation Conduct Its "Own."

Plaintiff anticipates this problem and asserts that HWM's liability is based on its "own affirmative debt-collection acts" and is not alleged "derivatively from Axiom's violation of the ICAA." (Compl. ¶ 76.) While Plaintiff seems aware that his legal position is contrary to well-established law, his attempt to plead around this consists solely of legal conclusion, not a factual allegation, and it is not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678–79. Particularly as the undisputed facts show the opposite. Each act attributed to HWM is a routine step in pending litigation: it attended hearings set by the court or noticed by the parties; it opposed motions following the entry of the order approving sale, it responded to petition(s) to vacate; and it filed exhibits. (Compl. ¶¶ 42, 77.) It is not alleged (for example) that HWM sent Plaintiff a collection letter. Plaintiff does not allege that any of those filings misstated the amount or character of the debt or any other fact; to the contrary, he concedes that the parties agreed on the deficiency amount. (*Id.* ¶¶ 62, 71.) The only thing that makes the conduct wrongful according to the Plaintiff, is Axiom's license status. Remove Axiom's license status and nothing remains. That is the derivative theory *Gibbs* and *Manlangit* rejected.

Finally, the IDFPR Consent Order does not change the analysis. It binds only "Axiom and the Department." (Dkt. 1-2 at 3.) It is not directed to HWM, says nothing about foreclosure, and directs Axiom to cease only "activity which requires licensure," which begs the very question that was then in litigation. The Third District itself declined to treat the Consent Order as authoritative. 2026 IL App (3d) 250359, ¶ 10 n.1. An administrative order directing a client to comply with a statute from which the client's lawyers are exempt cannot convert those lawyers' continued representation into an FDCPA violation, particularly when the issuance of the consent order occurred *after* the final order in the foreclosure had been entered.

## II. COUNT II DOES NOT PLAUSIBLY ALLEGE ANY FALSE, THREATENING, OR UNFAIR CONDUCT BY HWM.

Setting aside its reliance on the ICAA, Count II fails to allege the elements of any FDCPA provision it invokes.

### *A. HWM Made No False, Deceptive, or Misleading Representation (§§1692e, 1692e(10)).*

§1692e(10) triggers when a debt collector uses, "…any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." In this case, Plaintiff identifies no such statement or means. His theory is that, by seeking and defending relief for Axiom, HWM "implicitly" misrepresented that Axiom "possessed lawful authority". (Compl. ¶ 79.)

First, HWM's representation of Axiom was consistent with the only judicial ruling then in existence. Throughout the period of HWM's alleged conduct (April 8 through June 17, 2026), the circuit court's dismissal in the *People ex rel.* action, which found that Axiom "would never be subject to Collection Agency Act registration under the circumstances," was the only judicial decision on the question. (Compl. ¶ 31; Compl. Ex. C ¶ 7.) The Third District did not reverse until July 28, 2026, more than a month after the last act alleged against HWM, and it did so on a reading that it acknowledged the legislature may not have contemplated or even intended. (Compl. ¶ 32; Compl. Ex. C ¶ 17.) Advocating a position that matched the only judicial ruling on the issue is not a false, deceptive, or misleading representation. Nor did the Consent Order resolve the question: it addressed Axiom's activity from 2019 through 2024 and directed Axiom to cease "activity which requires licensure," which was the very question the circuit court had answered in Axiom's favor. (Dkt. 1-2 at 2–3.)

Second, Axiom's license status did not deprive it of the ability to obtain or defend relief in the Foreclosure Lawsuit. In *Trice*, the Illinois Supreme Court recognized that the ICAA

applies to debt buyers that use attorneys to file suit, 2015 IL 116129, ¶ 24, yet held that a judgment entered in favor of a collection agency that had failed to register under the Act is not void, "[b]ut any error in failing to register did not deprive the circuit court of jurisdiction." *Trice*, at ¶ 40.

The consequences the ICAA attaches to unlicensed activity are civil penalties and injunctive relief, 205 ILCS 740/4.5, 14a, not the nullification of judicial relief. Axiom therefore had legal authority to ask the circuit court to grant and preserve foreclosure relief, and the circuit court did so: it approved the sale and denied reconsideration. (Compl. ¶¶ 37–38.) Plaintiff does not ask this Court to disturb those orders. (*Id.* ¶¶ 5, 66.) A representation that a party may seek relief that the court has the power to grant, and in fact granted, is not false.

Third, no competent lawyer could have been misled. HWM's filings were directed to the state court and to Plaintiff's counsel. (*See* Compl. ¶¶ 42(d), 57(b).) "We conclude that a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable." *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007). Plaintiff's own allegations show that Axiom's license status was openly disputed, not concealed, so it becomes truly unfathomable that Plaintiff's counsel felt "deceived" by the ongoing litigation. Plaintiff was simultaneously litigating it in the *People ex rel.* action, he sought to bring the Consent Order before the foreclosure court, and a petition to vacate "based on the IDFPR Consent Order" was heard on June 17, 2026. (Compl. ¶¶ 30–31, 42(b), 42(i).) Nothing HWM filed could have misled Plaintiff's counsel about Axiom's license status.

### B. *Count II Alleges No "Threat" Under § 1692e(5).*

Section 1692e(5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). By its plain terms, the provision "extends only to threats of action that cannot legally be taken." *Fick v. Am. Acceptance Co., LLC*, 3:11 CV 229, 2012 WL 1074288, at *4 (N.D. Ind. Mar. 28, 2012). Plaintiff pleads his § 1692e(5) theory only "to the extent" HWM threatened unlawful remedies (Compl. ¶ 78), and he identifies no threat at all. Every act alleged against HWM is an action actually taken in pending litigation that was ultimately granted and ratified by a state court judge. (*Id.* ¶¶ 42, 77.) And for the reasons stated above, the relief Axiom sought was relief that could legally be granted. *See Trice*, 2015 IL 116129, ¶¶ 39–40.

### C. Litigating a Pending Case Is Not an "Unfair or Unconscionable" Means of Collection (§ 1692f).

Section 1692f prohibits "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. In *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 876 (7th Cir. 2015), a law firm (Bowman Heintz) representing Capital One faced a potential FDCPA lawsuit from a borrower by proceeding with a case that was already pending. The Court described the law firm's options as follows: "Bentrud, then, would have Bowman Heintz choose between dismissal for failure to prosecute and a possible malpractice claim from Capital One, on the one hand, and a potential, albeit uncertain, FDCPA violation, on the other. That is an easy choice for Bowman Heintz. In filing its second motion for summary judgment, Bowman Heintz made the only choice that a reasonable advocate in its position would have made. And that choice does not equate to an unfair or unconscionable means of attempting to collect a debt." *Id.*

The same is true here. All of the conduct alleged against HWM consisted of defending an order that the state court had already entered, by responding to post-judgment motions and

petitions filed by co-defendants, in a case from which counsel could not simply withdraw, *see* Ill. S. Ct. R. 13(c)(2), and at a time when the only judicial ruling on the issue held that no license was required. (Compl. ¶¶ 31, 42.) The only "unfairness" Plaintiff identifies is Axiom's license status. (*Id.* ¶ 80.) That is precisely the "piggyback" theory *Beler* forecloses. 480 F.3d at 474.

## III. DISMISSAL SHOULD BE WITH PREJUDICE.

Although leave to amend is ordinarily granted after a first dismissal, it is properly denied where amendment would be futile. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). The defects in Count II are legal, not factual. Its theory, that HWM is liable under the FDCPA because its client lacked an ICAA license, fails as a matter of law under *Gibbs*, *Manlangit*, *Beler*, and *Trice*, and the conduct on which it rests (appearances and filings in the Foreclosure Lawsuit) is fixed by the record in the state court. No amendment can cure those defects.

## CONCLUSION

WHEREFORE, Defendant Halliday, Watkins & Mann, P.C. respectfully requests that this Court grant its Motion, dismiss Count II of Plaintiff's Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and grant such other and further relief as the Court deems just.

Respectfully submitted,
HALLIDAY, WATKINS & MANN, P.C.
By: */s/ Christopher Iaria*

Christopher Iaria ARDC No. 6301746
Halliday, Watkins & Mann, P.C.
376 East 400 South, Suite 300
Salt Lake City, Utah 84111
ilteam@hwmlawfirm.com
Counsel for Defendant Halliday, Watkins & Mann, P.C.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on October 27, 2026, he caused the foregoing **Defendant Halliday, Watkins & Mann, P.C.'s Memorandum of Law in Support of Its Motion to Dismiss Count II of Plaintiff's Complaint** to be electronically filed using the CM/ECF system, which will send notification of such filing to all counsel of record, including the following:

*/s/ Christopher Iaria*

Scott J. Oh, Esq.
Counsel for: MARK EDWARD LASKOWSKI
Law Office of Scott J. Oh, LLC
5 Revere Drive, Ste. 200
Northbrook, IL 60062
sjo@sjolaw.com

Andrew Keeney Weiss
Counsel for: Quintairos, Prieto, Wood & Boyer, P.A.
141 West Jackson Boulevard, Ste 1575
Chicago, IL 60604
Andrew.weiss@qpwblaw.com

Joseph M. Herbas
Counsel for: Axiom Financial Services, LLC & FCI Lender Services, Inc.
33 N. LaSalle Street, Suite 1150
Chicago, IL 60602
jherbas@noonanandlieberman.com